### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**ANDREW J CRAMER,**

      **Petitioner,**                    **CASE NO. 2:11-CV-504**
                                                **JUDGE FROST**
      **v.**                            **MAGISTRATE JUDGE KING**

**SHERI DUFFEY, WARDEN,**

      **Respondent.**

### <u>REPORT AND RECOMMENDATION</u>

Petitioner, a state prisoner, brings this acton for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the *Petition*, Respondent's *Return of Writ*, Petitioner's *Traverse* and the exhibits of the parties.  For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED** as barred by the one-year statute of limitations under 28 U.S.C. § 2244(d).

### FACTS and PROCEDURAL HISTORY

The Ohio Fifth District Court of Appeals summarized the facts and procedural history of this case as follows:

> On December 9, 2005, the Licking County Grand Jury indicted Appellant on three counts of rape, in violation of R.C. 2907.02(A)(1)(b), felonies of the first degree; and three counts of gross sexual imposition, in violation of R.C. 2907.05(A)(4), felonies of the third degree. Appellant entered pleas of not guilty to the charges at his arraignment on December 12, 2005. The matter was scheduled for jury trial on May 10, 2006.
>
> On the morning of the trial, Appellant appeared before the trial court and asked to withdraw his former pleas of not guilty and entered pleas of guilty to all of the charges. The trial court conducted a Crim.R. 11 colloquy with Appellant. Thereafter, the trial court accepted Appellant's pleas and found him guilty as charged. The trial court deferred sentencing and ordered a presentence investigation

report. The trial court subsequently sentenced Appellant to an aggregate term of imprisonment of eighteen years. The trial court further adjudicated Appellant a sexually oriented offender.

On June 22, 2009, Appellant filed a Motion to Withdraw a Guilty Plea and Vacate Sentence pursuant to Crim.R. 32.1. In his motion, Appellant asserted he entered the guilty pleas based upon defense counsel's advising him he would be eligible for judicial release within six months. Appellant claimed he would not have entered the guilty pleas but for defense counsel's assurance of judicial release. Via Judgment Entry filed July 9, 2009, the trial court denied Appellant's motion.

It is from this judgment entry Appellant appeals, raising the following assignment of error:

"I. THE TRIAL COURT ERRED BY DENYING DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA PURSUANT TO CRIM.R. 32.1, VIOLATING MR. CRAMER'S RIGHT TO DUE PROCESS."

*State v. Cramer*, No. 2009-CA-00099, 2010 WL 2299135, at *1 (Ohio App. 5th Dist. June 8, 2010).

On June 8, 2010, the appellate court affirmed the trial court's judgment. *Id*. On October 13, 2010, the Ohio Supreme Court dismissed Petitioner's subsequent appeal. *State v. Cramer*, 126 Ohio St.3d 1598 (2010). Prior to filing his motion to withdraw guilty plea, on January 7, 2009, Petitioner filed a motion for judicial release. On January 8, 2009, the trial court denied Petitioner's request. Petitioner did not file an appeal from that decision.

On September 17, 2009, Petitioner filed a petition for post conviction relief;, which the trial court denied. *Exhibits 22, 23 to Return of Writ*. Petitioner did not file an appeal from that decision.

On June 10, 2011, Petitioner filed his *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He alleges that he is in the custody of the Respondent in violation of the Constitution of the United States based upon the following grounds:

1. Ineffective assistance of trial counsel.

2

Counsel gave erroneous advice to encourage Petitioner to plead guilty [and] failed to investigate potentially exculpatory evidence.

2. Court erred in refusing to withdraw[] guilty plea.

The court was presented with affidavits from the alleged victims recanting prior testimony and removing the factual predicate the pleas were based on a miscarriage of justice has occurred because of [sic].

It is the position of the Respondent that Petitioner's claims are time-barred.

## STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which became effective on April 24, 1996, imposes a one-year statute of limitations on the filing of habeas corpus petitions. 28 U.S.C. § 2244(d) provides:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period

3

of limitation under this subsection.

Applying the language of § 2244(d)(1)(A), petitioner's conviction became final on July 8, 2006, *i.e.,*thirty days after his June 8, 2006, judgment entry of sentence, when the time for filing a timely appeal expired. *See Exhibit 8 to Return of Writ; Searcy v. Carter,* 246 F.3d 515, 518-19 (6th Cir.2001); *Marcum v. Lazarof,* 301 F.3d 480, 481 (6th Cir.2002); Ohio App.R. 4(A). Presuming that the statute of limitations began to run on the following day, it expired one year later, on July 9, 2007. Yet Petitioner waited more than three and one half years later, until June 8, 2011, to execute his federal habeas corpus petition.  His September 17, 2009, petition for post conviction relief did not toll the running of the statute of limitations, because Petitioner filed his post conviction petition after the statute of limitations had already expired. "The tolling provision does not ... 'revive' the limitations period (*i.e.*, restart the clock at zero); it can only serve to pause a clock that has not yet fully run." *Vroman v. Brigano,* 346 F.3d 598, 601 (6 Cir.2003), citing *Rashid v. Khulmann,* 991 F.Supp. 254, 259 (S.D.N.Y.1998); *Winkfield v. Bagley,* 66 Fed.Appx. 578, unpublished, 2003 WL 21259699 (6th Cir. May 28, 2003)(same).

Further, petitioner has failed to allege any extraordinary circumstances that would justify the equitable tolling of the statute of limitations. *See Lawrence v. Florida,* 549 U.S. 327, 336 (2007)(citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).  *Jurado v. Burt,* 337 F.3d 638, 643 (6th Cir. 2003). Therefore, this action is time-barred, unless one of the provisions of § 2244(d)(1)(B)-(D) apply.

As grounds for equitable tolling of the statute of limitations, or in support of his argument that the record justifies a later start date of the running of the statute of limitations, Petitioner contends that his attorney misled him into believing that he would be released on judicial release

4

after six months.  He asserts that he acted diligently in pursuing his rights upon learning that in fact he would not obtain early release.  He further contends that he had no knowledge regarding his legal rights, was not advised of, and did not know about his right to appeal.  Additionally, Petitioner alleges that he is actually innocent of the charges against him.  Petitioner seeks an evidentiary hearing on this issue.  *See Traverse*.

In support of his claim that defense counsel misled him into entering a guilty plea by leading him to believe that he would obtain early release from his sentence after six months incarceration, Petitioner has attached a purported letter from defense counsel dated April 24, 2006.  The letter indicates in relevant part that, should Petitioner plead guilty, he would be eligible for judicial release after serving six months imprisonment.   However, the document also indicates that Petitioner's defense counsel cautioned Petitioner that his eligibility for early release also depended on his "performance in the institution," the pre-sentence investigation report, and other information before the trial court.  *See Exhibit 9 to Return of Writ*.  In other words, the letter from defense counsel makes no promise regarding Petitioner's ability to obtain early release from incarceration after six months.

Moreover, the transcript of Petitioner's guilty plea hearing indicates that the trial court explicitly advised Petitioner that he would not be eligible for early release under Ohio law due to the nature of the charges.  Petitioner indicated that he understood.  *Exhibit 7 to Return of Writ*. Thus, Petitioner will not now be heard to state that he pleaded guilty based on the misrepresentation of his attorney.

> [T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a

5

strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, so are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison,* 431 U.S. 63, 74 (1977).

Additionally, Petitioner signed a guilty plea form indicating that he understood his limited right to appeal and that any appeal must be filed within thirty days.  *Exhibit 6 to Return of Writ.*  By his own account, Petitioner waited approximately two and one half years before filing his motion for judicial release.  It was only upon the denial of that motion that Petitioner pursued a motion to withdraw his guilty plea.  A petitioner's *pro se* or  incarcerated status or ignorance of the law does not constitute grounds for the equitable tolling of the statute of limitations.  *See United States v. Baker*, 197 F.3d 211, 218 (6th Cir. 1999); *Fisher v. Johnson,* 174 F3d 710, 714-15 (5th Cir. 1999); *Rose v. Doyle*, 945 F.2d 1331, 1335 (6th Cir 1991).

Petitioner also asserts that he is actually innocent of the charges against him and that his convictions are the result of a manifest miscarriage of justice. He alleges that his confession to police was the result of coercion and "hours of mental abuse" by police.[1]  In support of his claim of actual innocence, Petitioner has attached what he represents are the affidavits of his daughters, the alleged victims in this case, recanting their allegations of sexual abuse by Petitioner.  Petitioner indicates that he could not obtain these affidavits earlier because he had to wait until his children became adults and were no longer under the authority of his ex-wife who, Petitioner argues, forced the girls to falsely accuse him of sexual abuse. Petitioner further contends that previously undisclosed police

---

[1]  Petitioner asks for the production of a copy of the transcript of his statement to police. This document may presumably be obtained from Petitioner's former defense counsel.  In any event, that document is not necessary for this Court's resolution of Petitioner's claims. Therefore, Petitioner's request is **DENIED**.

reports, not a part of the record here, support his claim of actual innocence.  *See Traverse*.

The sworn statement of Holly Woods, executed on May 14, 2009, indicates in relevant part as follows:

> [M]y father, Andrew Cramer, has never at any time had any inappropriate sexual contact with me, and I only said that he did because I feared I would be prosecuted and go to jail if I did not;
>
> I was told to say the things I said by the Assistant County Prosecutor, and Detective Barbuto, prior to trial and sentencing, that if [I] recanted my statement to the court, I would be prosecuted and go to jail myself;
>
> I was coerced into making the original statement against Andrew Cramer by police, and also because my mother and father were going through a divorce As a minor at the time, I felt I had to do what I was told and say the things that I did;
>
> I am now of the age of majority, no longer under the influence of an adult, or anyone else telling me what to do, therefore, I wish to re-cant my earlier statement and tell the truth;
>
> I have made the above statement of my own free will, and have been offered nothing, nor have I been threatened in any way to re-cant my original statement.  I am coming forward now because, I wish to see justice done in this case.

*See Exhibit 21 to Return of Writ.*  The sworn statement of Katie Cramer indicates in relevant part as follows:

> [M]y father, Andrew Cramer, has never touched me in any inapropriate sexual way, and I said this because I was bribed.
>
> Detective Barbuto and the prosecutor told me to say the things I did and if I were to change my story to the court, I would never get to see my family again and go to foster care.
>
> Shari Mount was the person who had written the original statement against my father and not I, the police as well, co[e]rced me into agreeing with the statement.

7

I want to see that my statement is heard and read, and that no one now is bribing me or co[e]rcing me.  I would like to re-cant the original statement and tell the truth.

I have not been threatened or co[e]rced in any way to re-cant the original statement.  I have written this statement at my free will and have not been offered or threatened anything or by anyone.  I am writing this now because I wish to see my father out of prison over this case to have justice.

*See Exhibit 21 to Return of Writ.*

A Petitioner's actual innocence may justify equitable tolling of the statute of limitations.

*Souter v. Jones,* 395 F.3d 577 (6th Cir. 2005).

The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims."  *Schlup,* 513 U.S. at 316, 115 S.Ct. 851, 130 L.Ed.2d 808. Thus, the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup,* 513 U.S. at 324, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.' " *Id.* at 321, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808.

*Id*. at 589-90.  Petitioner has failed to meet this standard here.

At the time of Petitioner's guilty plea, the prosecutor summarized the facts of this case as

follows:

> [O]n Main Street in St. Louisville, Ohio, when the Defendant had visitation and/or custody of these two girls [who were under 13 years of age], there was at least an incident that he, the Defendant, admitted to when interviewed by the police that consisted of sexual conduct, that being oral sex performed on himself by the girls and oral sex by the Defendant on them.  Those were the basis for the rape charges.
>
> There is also an indication that the Defendant had touched the girls on their legs and thigh area and their vagina.  That touching is the basis for the sexual contact, the gross sexual imposition charges.
>
> The evidence would show that . . . this was done for the purpose of sexual gratification of the Defendant, although the Defendant, during his interview, claimed. . . that this was some kind of educational process for the girls.  He also admitted that he knew this was wrong but claimed that he did not mean any harm by it.

*Guilty Plea Transcript*, at 9-10.  Petitioner agreed with this statement of facts.  *Id*. at 10.  He stated that he was entering his guilty plea because he was guilty as charged.  *Id*. at 13.  He admitted his guilt.  He denied that any threats or promises were made to induce his guilty plea.  *Id*. at 14.  He had no questions for the trial court.  *Id*. at 15.

At sentencing, Petitioner expressed his remorse:

> I just want to apologize to my family.  I'm sorry and I love my children dearly They mean everything to me.  I'd do everything in the world for my children.  That's it.

*Sentencing Transcript*, at 5.  A letter from Petitioner's daughter, Katie, read at the time of sentencing, states in relevant part:

> I'm writing this letter to tell you how I feel from what you did to me. . . . You really used me and sold me to your friends.  From what you did to me, I have to go to foster care.  I have to tell you this because it has affected my future, but I won't let it destroy my life.
>
> . . . I didn't ask for any of this.  Your trucker friends looking at me, kids at school talking about me behind my back, teachers feeling

> sorry for me.  I just wanted to be a kid, not to be known as a whore or a bike that had been rode around town.
>
> Now I have no trust for people.  I can't look or make eye contact or even face to face, because I feel like I could get abused again.
>
> ***
>
> You have two girls, Holly and I.  You were not supposed to use us or sell us.  What kind of dad could do this to his own?

*Id*. at 6-7.  Holly Cramer stated at sentencing:

> I am one of his daughters, and I want everyone to know that he is the greatest person I have ever known and I love him and he's –

*Id*. at 9.  The trial court responded as follows:

> COURT: Mr. Cramer has admitted to raping his children –
>
> ***
>
> – so don't tell me that he didn't do it.  Don't tell me you think he didn't do it or didn't do anything.  The Court record is public record.  You're free to get a copy of the tape where he said it and his written indication that he, you know, had them have oral sex with him in St. Louisville, not during the truck driving things, not with Mr. Sanders but with him.
>
> . . . don't tell me that he has not admitted. . . many times to doing these things to different people, even if he has not admitted them to you. . . . [H]e has never said that. . . these are all lies, he never did these things or they made them up.  He's never said them to me or to the attorneys or to the Court. . . . I don't want the record to reflect here that we're sentencing a person here for things he did not do, and it's not fair to anybody for you to imply those.
>
> [T]he Court's also had orders while the case has been pending that he's not to have any contact with the victims of his offenses. . . and he's continued to write letters to his daughters and have them smuggled to them through the kids' other relatives, basically encouraging them not to participate in the prosecution so he could not be penalized here. . . that's what has occurred.  And that's all in the court file, too.  You're free to read it as anybody is. . . .

10

        ***

> These letters are all in here, along with the statements from his two daughters that corroborate, indicate that. . . he indeed did these things, and along with his statements that he did these things.

*Id*. at 9-12.

In view of the record before this Court, Petitioner's representations at the time of his guilty plea and sentencing, his admission to police of the crimes charged, and the statement of at least one of his daughters at sentencing, this Court is not persuaded that Petitioner's subsequent submission of the alleged victims' affidavits recanting their prior allegations against Petitioner constitutes evidence of his actual innocence justifying an evidentiary hearing on the issue of equitable tolling of the statute of limitations.

> "[R]ecantations are viewed with extreme suspicion by the courts." *In re Davis*, 565 F.3d 810, 825 (11th Cir.2009) (citing cases); *see also Chavis–Tucker v. Hudson,* 348 Fed.Appx. 125, 134–35 (6th Cir.2009), *cert. denied,* —— U.S. ——, 130 S.Ct. 1712, 176 L.Ed.2d 198 (2010) (quoting *United States v. Chambers,* 944 F.2d 1253, 1264 (6th Cir.1991)); *Webb v. Bell,* No. 2:07CV12689, 2008 WL 2242616, at *6 (E.D.Mich. May 30, 2008). Justice Brennan expressed this opinion on the subject:
>
> > Recantation testimony is properly viewed with great suspicion. It upsets society's interest in the finality of convictions, is very often unreliable and given for suspect motives, and most often serves merely to impeach cumulative evidence rather than to undermine confidence in the accuracy of the conviction. For these reasons, a witness' recantation of trial testimony typically will justify a new trial only where the reviewing judge after analyzing the recantation is satisfied that it is true and that it will "render probable a different verdict."
>
> *Dobbert v. Wainwright,* 468 U.S. 1231, 1233–1234, 105 S.Ct. 34, 82 L.Ed.2d 925 (1984) (Brennan, J., dissenting from denial of *certiorari*). The Sixth Circuit has characterized similar affidavits as

11

> "of little value, as they merely recant their trial testimony." *Carter v. Mitchell,* 443 F.3d 517, 539 (6th Cir. 2006), *cert. denied,* 549 U.S. 1127, 127 S.Ct. 955, 166 L.Ed.2d 730 (2007). See also *Byrd v. Collins,* 209 F.3d 486, 508 n. 16 (6th Cir. 2000); *United States v. Lewis,* 338 F.2d 137, 139 (6th Cir. 1964).

*Cleveland v. Bradshaw*, 760 F. Supp.2d 751, 772 (N.D. Ohio 2011).  Moreover, it does not appear that Petitioner acted diligently in pursuing his rights.  The record fails to reflect either that an impediment prevented him from timely filing his habeas corpus petition or that he was unable earlier to discover, with due diligence, the factual predicate for his claims such that this action is timely under 28 U.S.C. 2244(d)(1)(B), (D).

In short, the Court concludes that the action is untimely**.**

**WHEREUPON** the Magistrate Judge **RECOMMENDS** this action be **DISMISSED** as time-barred.

### PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation*

de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

 *s/ Norah McCann King*
Norah McCann King
United States Magistrate Judge

February 3, 2012

13